## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**APRIL TREJO ESPINO,**<br><br>Debtor. | **Bankruptcy Case<br>No. 20-40528-JMM** |
| **R. SAM HOPKINS, TRUSTEE,**<br><br>Plaintiff,<br><br>v.<br><br>**ALBERTO GALVAN MARTINEZ,**<br><br>Defendant. | **Adv. Proceeding<br>No. 21-08027-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Thomas D. Smith, SPINNER, WOOD & SMITH, Pocatello, Idaho, Attorney for Plaintiff.

Aaron Tolson, TOLSON & WAYMENT, Ammon, Idaho, Attorney for Defendant.

### *Introduction*

Plaintiff, chapter 7 trustee, R. Sam Hopkins ("Trustee"), initiated this adversary

proceeding against Defendant Alberto Martinez ("Defendant") on September 7, 2021.

MEMORANDUM OF DECISION–1

Doc. No. 1.[1]  Defendant filed an answer on September 20, 2021.  Doc. No. 6.  By his

complaint, Trustee seeks a determination that real property titled in Debtor's name

belongs to the bankruptcy estate and by implication that Defendant does not have an

interest in the property.  Alternatively, if Defendant proves an interest in the property,

Trustee seeks to avoid and recover that interest under §§ 544(a)(3) and 550(a)(1) of the

Bankruptcy Code.[2,3]  In response, Defendant, who has resided at and made all the

payments on the debt encumbering the property since Debtor purchased it in 2010, asserts

an equitable interest in the property.  Defendant bases his interest on his partial

performance of an oral contract for the property with Debtor (and the sellers).  Further,

Defendant argues any effort by Trustee to avoid his interest in the property fails because

his possession of the property would put a prospective purchaser on inquiry notice of his

interest.

　　　　Trustee submitted a pre-trial brief in support of his position on June 6, 2022.  Doc.

No. 17.  The Court held a trial on the matters alleged on August 15, 2022, where

Defendant and Debtor testified.  Defendant submitted a post-trial brief on August 18,

---

[1] All docket entries referencing this adversary proceeding will be referred to as "Doc. No." while all references to the main bankruptcy case, *In re Espino*, 20-40528-JMM, will be designated "BK Doc. No."

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] To summarize, Count I of Trustee's complaint seeks a determination of Trustee and Defendant's respective ownership interests in the property.  Count II seeks to avoid any ownership interest of Defendant in the property pursuant to § 544(a)(3).  If Trustee prevails on Counts I or II, Trustee seeks a judgment against Defendant by Count III to recover the property or its value under § 550(a)(1) to the extent it is necessary.  Doc. Nos. 1 & 17.

MEMORANDUM OF DECISION–2

2022, to which Trustee filed a response on September 2, 2022.  Doc. Nos. 23 & 25.  The

Court then took the matter under advisement.  Having now considered the record,

applicable law, and arguments of the parties, the Court makes the following findings of

fact and conclusions of law.  Rules 7052; 9014.

*Background*

Defendant was Debtor's stepfather.  He was married to Debtor's mother for about

nineteen years until they divorced in 2017.  At some point in 2010, Defendant and

Debtor's mother approached Debtor with a proposition to buy a single-family home for

them because they had bad credit.  The house was located at 527 West 1st South, Rigby,

Idaho 83442 (the "House").

Debtor agreed to the plan and on October 25, 2010, closed on the purchase of the

House for $82,000.  The sellers were Javier and Rosa Caudillo.  Debtor's mother was

related to Rosa Caudillo and Debtor described the Caudillos as neighbors.  Debtor signed

a promissory note to pay the $82,000 to the Caudillos, who financed the transaction, over

thirty years.  Ex. No. 103.  The note was secured by a deed of trust executed by Debtor.

Ex. No. 102.  The Caudillos executed a warranty deed to convey the House to Debtor,

which was recorded in Jefferson County, Idaho on October 26, 2010.  Ex. No. 104.

Neither Defendant nor Debtor's mother's name was on any of the title or sale documents.

Ex. Nos. 100–104.

Defendant and Debtor testified the terms of their arrangement were that: (i) Debtor

was going to buy the House on behalf of Defendant and her mother, (ii) Defendant would

MEMORANDUM OF DECISION–3

apparently pay for the House,[4] and (iii) at some point in the future, when they fixed their credit, Debtor would transfer title to them. Defendant and Debtor did not address what would happen if Defendant was not able to make payments on the note. Debtor assumed her mother and Defendant had planned everything and Defendant would be able to make the payments otherwise they would not be purchasing the House.[5]

Debtor, who was a student and not working at the time, recalled she had a minimal role in the transaction. She just went to the escrow office with Defendant, her mother, and the Caudillos to sign the documents. Debtor stated Defendant and her mother were the ones who primarily spoke with the Caudillos about the purchase. Defendant and Debtor testified the Caudillos knew Debtor was purchasing the House on behalf of Defendant and her mother and would transfer the deed to them at some point.

Defendant never entered into a written agreement to buy the House from Debtor or the Caudillos. Doc. No. 1 ¶ 15; Doc. No. 6 ¶ 17. After Debtor bought the House, she and Defendant wrote a letter, which Debtor signed, stating that she did not intend to keep the House for herself. Debtor lived at the House with Defendant and her mother for about eight or nine months until around July 2011, when she moved out. She has not resided there since. Debtor's mother lived at the House until approximately 2015. Debtor

---

[4] Debtor testified she did not have any agreement with Defendant and her mother about *how* the promissory note was going to be repaid. In contrast, Defendant stated he had a specific agreement with Debtor that he would be responsible for paying the purchase price of the House.

[5] Specifically, Debtor stated she did not have any agreement if Defendant and her mother were not able to make a payment on the note, noting she figured they "had it all together" and had "already planned everything, how it would be arranged."

MEMORANDUM OF DECISION–4

explained her mother moving out did not alter the arrangement because Defendant had been the only one making any payments and her mother did not want anything to do with the House.

Defendant has resided at the House from October 2010 to the present. Defendant and Debtor testified Defendant has paid all expenses associated with the House, including the payments on the note to the Caudillos (which, per the terms of the note, require minimum payments of $545.55/month). Ex. No. 103.[6] Defendant also has made improvements to the House. Specifically, Debtor testified Defendant replaced the roof, installed new carpet, and painted the House.

On July 9, 2020, Debtor filed for chapter 7 bankruptcy. BK Doc. No. 1. As of the petition date, the title to the House remained in Debtor's name. A few hours before filing her petition, Debtor recorded a declaration of homestead stating she intends to claim the House as her homestead and reside there. Ex. No. 105.[7] On her petition, Debtor indicated she lives at an Idaho Falls address which she rents.[8] BK Doc. No. 1, p. 7–8. On her contemporaneously filed schedules and statements, Debtor stated she holds a fee simple ownership interest in the House but valued the House and her interest in it at

---

[6] Defendant has a direct deposit arrangement with a bank that is an intermediary between him and Mr. Caudillo, and the escrow company takes the money out of his account.

[7] The declaration of homestead indicates it was recorded at 9:28 p.m. on July 9, 2020. Trustee alleged the declaration was actually recorded at 9:28 a.m., which Defendant admitted in his answer. Doc. No. 1 ¶ 11; Doc. No. 6 ¶ 13.

[8] On her summary of assets and liabilities, Debtor listed property of $2,510 against liabilities of $33,576, which were mainly student loan and medical debt. BK Doc. No. 1, p. 23, 35, 37.

MEMORANDUM OF DECISION–5

$0.00.  Ex. No. 106.  Debtor did not schedule the Caudillos as creditors or otherwise.

Debtor also did not schedule Defendant's interest in the House or disclose any executory

contracts.  Notwithstanding her earlier recorded declaration of homestead, Debtor did not

claim a homestead exemption in the House.  BK Doc. No. 1, p. 31–32.  On her Statement

of Financial Affairs, Debtor stated she does not hold or control property that someone

else owns, including property held in trust.  Ex. No. 107.

Debtor testified she signed the declaration of homestead on the advice of her

bankruptcy attorney, Kameron Youngblood, who prepared the document.[9]  Debtor stated

she did not want to lose the House because it was not hers, and Mr. Youngblood

instructed her that if she signed the declaration the House was going to be protected.[10]

Debtor acknowledged reading the declaration and that she did not intend to reside at the

House notwithstanding the declaration.  She stated she was pregnant at the time, that her

"brain wasn't fully there," and that Mr. Youngblood did not explain what the declaration

meant.  Defendant testified he was aware Debtor filed the declaration of homestead

though he did not think she would be residing at the House with him.

---

[9] Curiously, Debtor testified when she went to Mr. Youngblood to file bankruptcy her aim was to get the House out of her name because she was married and wanted to purchase another house.  Debtor testified when she filed for bankruptcy she was not worried about the debt on the House or Defendant not paying because he had done a "really good job of paying."  Her concern was that with her mother out of the picture Defendant would probably feel safer with the House in his name or the name of one of his biological children.

[10] Mr. Youngblood subsequently withdrew from representing Debtor (and debtors in numerous other cases) in November 2021 because he was not able to provide adequate representation.  BK Doc. No. 37.

MEMORANDUM OF DECISION–6

At trial, when asked about the apparently contradictory positions she took with respect to the House on her bankruptcy schedules and her purported agreement with Defendant, Debtor stated she did not understand the questions, did not have sufficient assistance, and/or as with the declaration of homestead, she filled them out at the direction of her bankruptcy counsel.

### *Analysis and Disposition*

There are two issues before the Court: one, whether Defendant has an interest in the House, and two, if so, whether Trustee can avoid that interest using his "strong-arm" powers under § 544(a)(3).

**1) Does Defendant have an interest in the House?**

On the filing of a bankruptcy petition, a bankruptcy estate is created, which generally consists of all a debtor's property. Section 541(a)(1) provides the bankruptcy estate is comprised of, with certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case." Idaho law, which the Court looks to in order to determine a debtor's interest in property, presumes the title holder of real property owns it. *Hettinga v. Sybrandy*, 126 Idaho 467, 469, 886 P.2d 772, 774 (1994) (citing *Russ Ballard & Family Achievement Inst. v. Lava Hot Springs Resort, Inc.*, 97 Idaho 572, 579, 548 P.2d 72, 79 (1976)). Because of this presumption, "[one] who would claim the ownership of property of which the legal title stands of record in another, or that the same is held by such person in trust for the one so claiming, must establish such claim by evidence that is clear, satisfactory and convincing." *Russ Ballard &*

MEMORANDUM OF DECISION–7

*Family Achievement Inst.*, 97 Idaho at 579, 548 P.2d at 79 (quoting *Redsted v. Weiss*, 73

Cal. App. 2d 889, 892, 167 P.2d 735, 737 (1946)).

Trustee argues the House is property of the estate under § 541(a)(1) since it is

titled in Debtor's name and Defendant cannot prove an interest in the property by

operation or implication of law (in this case, a resulting trust or partial performance of an

oral contract).  In response, Defendant does not address whether he is the beneficiary of a

resulting trust in the House, but argues he entered into an oral contract with Debtor and

the Caudillos to purchase the House, which he partially performed.

### a) Does Defendant have an interest in the House through partial performance of an oral contract?

In general, an oral agreement for the purchase of real property is unenforceable

because it violates the statute of frauds.  Idaho's codification of the statute of frauds for

real estate transactions, Idaho Code § 9-503, "requires that all interests in real property

must be accomplished through a writing, signed by the party granting the interest or that

party's agent." *Hettinga*, 126 Idaho at 469, 886 P.2d at 774 (citing Idaho Code § 9-503).

Limited exceptions exist for partially performed oral contracts and resulting trusts.  *See*

Idaho Code § 9-504; *Roundy v. Waner*, 98 Idaho 625, 627–28, 570 P.2d 862, 864–65

(1977).

The partial performance exception is predicated on the existence of an oral

agreement to convey land which is partially performed.  *See* Idaho Code § 9-504.  To

compel specific performance under this exception two requirements must be met: "(1) the

MEMORANDUM OF DECISION–8

underlying agreement must be clearly established, and (2) the partial performance must be sufficient … and directly referable to the established oral agreement." *Rainsdon v. Gearheart (In re Ford)*, No. 19-ap-8030-JMM, 2021 WL 115552, at *6 (Bankr. D. Idaho Jan. 6, 2021) (citing *Sec. Inv'r Fund LLC v. Crumb*, 165 Idaho 280, 443 P.3d 1036, 1044 (2019); *Simons v. Simons*, 134 Idaho 824, 827, 11 P.3d 20, 23 (Idaho 2000)).  To be clearly established, "[t]here must be a meeting of the minds on the essential terms of the agreement, and [the] contract must be 'complete, definite, and certain in all its material terms, or contain provisions which are capable in themselves of being reduced to certainty.'" *See Reynard v. Bank of Am., N.A. (In re Resler)*, 551 B.R. 835, 842 (Bankr. D. Idaho 2016) (quoting *Lawrence v. Hutchinson*, 146 Idaho 892, 898, 204 P.3d 532, 538 (Ct. App. 2009)).  Recognized minimum provisions to enforce the specific performance of a land sale contract include, "the parties involved, the subject matter thereof, the price or consideration, [and] a description of the property[.]" *Chapin v. Linden*, 144 Idaho 393, 396, 162 P.3d 772, 775 (2007).  As to the second requirement, "[t]he most important acts which constitute a sufficient part performance are actual possession, permanent and valuable improvements and these two combined." *Gearheart*, No. 19-ap-8030-JMM, 2021 WL 115552, at *6 (quoting *Simons*, 134 Idaho at 827, 11 P.3d at 23).

Defendant argues, as per his testimony at trial, he "entered into an oral land sale contract with [Debtor] and the Caudillos to purchase the [House]."  Doc. No. 23, p. 3. Specifically, Defendant asserts that he and Debtor "entered into a verbal installment land sale contract in which Defendant would use Debtor's credit to purchase the [House] from

MEMORANDUM OF DECISION–9

the Debtor,[11] live on the Property and make all of the payments thereon … [and he] had

an agreement with [the] Caudillos to transfer money through escrow at his bank [to the]

Caudillos." *Id.* at p. 2.  In Defendant's view, he partially performed this contract because

he made all the payments on the note, was in exclusive possession of the House, and

made improvements to the House.  *Id.* at p. 5.  In support, Defendant cites to *Mikesell v.

Newworld Dev. Corp*., 122 Idaho 868, 840 P.2d 1090 (Ct. App. 1992), a case where the

Idaho Court of Appeals affirmed that a partially performed oral land sale contract could

not be avoided under the statute of frauds.

        The Court disagrees.  It is not disputed that Defendant has performed pursuant to

some type of understanding or agreement concerning the House (*i.e.,* the second

requirement).  Indeed, after the closing on the House, Defendant took possession of the

House and has lived in and cared for it for over ten years, all while making the monthly

payments on the note.  But, the Court finds Defendant has not satisfied the first

requirement.  In other words, the Court does not find Defendant offered clear and

convincing evidence of an oral contract to convey the House to him that is "complete,

definite and certain in all its material terms."

        First, the Court does not find sufficient evidence was presented that the Caudillos

were a party to the oral agreement in the first instance.  As to this point, Defendant

misstates his testimony at trial.  Defendant never testified he entered into a land sale

---

[11] The Court presumes this is a scrivener's error and Defendant meant to say Defendant used Debtor's
credit to purchase the House from the Caudillos, not Debtor.

MEMORANDUM OF DECISION–10

contract with the Caudillos to purchase the House.  He and Debtor only said the Caudillos knew Debtor was purchasing the House on his behalf and that he made payments to a bank that was "between" him and Mr. Caudillo each month.  Presumably, the Caudillos understood that Defendant would be the one making payments and that Debtor was buying the House for her parents, but no testimony was offered that they entered into any kind of side agreement or contract with the Defendant for the conveyance of the House.  Rather, the record shows the Caudillos contracted with Debtor and conveyed the House to her.

Second, the Court does not find sufficient evidence has been offered that Defendant and Debtor entered into an oral contract for the sale of the House to Defendant.  It is unclear if both Defendant and Debtor understood they were entering into a contract for the House.  To form a valid contract there must be a meeting of the minds evidenced by a "manifestation of mutual intent to contract."  *Scoyni v. Salvador,* No. 1:18-CV-00506-BLW, 2020 WL 560570, at *3 (D. Idaho Feb. 4, 2020), *aff'd,* No. 20-35123, 2021 WL 5002213 (9th Cir. Oct. 28, 2021), *cert. denied*, 142 S. Ct. 2778 (2022). "Proof of a meeting of the minds requires evidence of mutual understanding as to the terms of the agreement and assent of both parties."  *Id.* (quoting *Potts Const. Co. v. N. Kootenai Water Dist.*, 141 Idaho 678, 681, 116 P.3d 8, 11 (2005)).  Debtor and Defendant never testified they entered into a contract for the purchase and sale of the House.  To this point, when asked if she contracted with the Defendant and her mother to purchase the House as of the closing date, she stated "not during that time, I know I did write

MEMORANDUM OF DECISION–11

something later on for them just saying the House was for them."  As to Defendant, while

he asserted in his post-trial brief that he entered into an oral land sale contract, he never

said as much at trial.  Rather, Defendant testified to an agreement with Debtor that the

house would be in her name, that he would make the payments, and eventually she would

transfer title to him.

In addition, it is unclear when title to the House was to be transferred to

Defendant.  Debtor testified that this would happen when Defendant and her mother's

credit improved, while Defendant non-specifically testified "after some time" title would

be transferred to them.  Similarly, Debtor and Defendant did not address what the

consideration for the transaction was, another of the minimum terms under the first

requirement.  This is not sufficient and definite enough to specifically enforce the

conveyance of the House to Defendant.

Last, the facts of this case are not analogous to *Mikesell* and dictate a different

result.  In *Mikesell*, adjacent property owners entered into an oral agreement where the

buyers agreed to purchase a thirty-foot parcel from the sellers for $1,500.  *Mikesell v.*

*Newworld Dev. Corp.*, 122 Idaho 868, 870, 840 P.2d 1090, 1092 (Ct. App. 1992).  The

parties agreed to installment payments on demand and that upon completion of the

payments the buyers would receive title.  The parties did not reach an agreement when

the full amount would be paid.  *Id.*  Years later, the sellers' real property went into

foreclosure and the sellers' successor in title raised the statute of frauds to avoid the

enforcement of the agreement for the parcel.  *Mikesell*, 122 Idaho 873, 840 P.2d 1095.

MEMORANDUM OF DECISION–12

The Idaho Court of Appeals found it "clear from the record that the evidence presented at trial demonstrated the essential terms of the contract with definiteness and certainty," highlighting:

> The actual parties to the agreement testified that they agreed to sell and purchase the eastern thirty feet of the [sellers'] lot for $50 a foot, for a total of $1,500. The description of the land was certain based on the uncontradicted testimony of the contracting parties and the evidence regarding their actions with respect to the thirty-foot parcel. After the second $600 payment by the [buyers], the [sellers] gave the [buyers] a receipt which stated who the parties were and that the $1,200 thus received was in payment for the thirty-foot parcel, leaving a balance of $300 to be paid. Based on the evidence in the record, the district court had clear and convincing evidence showing who the parties to the contract were, what land was involved, and how much money was to be paid for the land.

*Mikesell*, 122 Idaho 874–75, 840 P.2d 1096–97. Here, unlike in *Mikesell*, no testimony was offered that Debtor agreed to sell the House to Defendant. Rather, Defendant and Debtor testified that Debtor agreed to purchase the House on Defendant's behalf. This is not a distinction without a difference. Accordingly, for this and the other reasons stated, the Court cannot find an oral contract to convey the House to Defendant has been established by clear and convincing evidence.

### b) Is Defendant the beneficiary of a resulting trust in the House?

Though not specifically argued by Defendant, the issue of whether Defendant is the beneficiary of a resulting trust in the House was argued by Trustee. A resulting trust "arises by implication of law to enforce the parties' presumed intent to create a trust." *In re Woods*, 386 B.R. 758, 763 n.9 (Bankr. D. Idaho 2008) (citing *Hettinga*, 886 P.2d at

MEMORANDUM OF DECISION–13

775; *Shurrum v. Watts*, 80 Idaho 44, 324 P.2d 380, 385 (1958)).[12]  "As a general rule, a

resulting trust arises only where such may reasonably be presumed to be the intention of

the parties as determined from the facts and circumstances existing at the time of the

transaction." *Herman v. Herman*, 136 Idaho 781, 786, 41 P.3d 209, 214 (2002) (quoting

*Shurrum*, 80 Idaho at 53, 324 P.2d at 385.)[13]  As with a partially performed oral contract,

a resulting trust may be enforced without a writing though a person claiming such an

ownership interest must establish it by "evidence that is clear, satisfactory and

convincing." *Russ Ballard & Family Achievement Inst.*, 97 Idaho at 579, 548 P.2d at 79

(quoting *In re Capolino's Estate*, 94 Cal. App. 2d 574, 577, 210 P.2d 850, 852 (1949)).[14]

Under Idaho law, a resulting trust arises where "title to property is transferred to

one party, the trustee, although another party, the beneficiary of the trust, … paid or

incurred an absolute obligation to pay for that property." *Hettinga*, 126 Idaho at 470, 886

P.2d at 775.  "An oral agreement to repay the purchaser (trustee) the purchase price of the

---

[12] Stated differently, a resulting trust:

> [N]ever arises out of contract or agreement that is legally enforceable, "but … by
> implication of law from [the parties'] acts and conduct apart from any contract, the law
> implying a trust where the acts of the party to be charged as trustee have been such as are
> in honesty and fair dealing consistent only with a purpose to hold the property in trust[.]"

*Hawe v. Hawe*, 89 Idaho 367, 375, 406 P.2d 106, 110 (1965) (quoting *Shepherd v. Dougan*, 58 Idaho 543, 553, 76 P.2d 442, 445 (1937)).

[13] *Airwork Corp. v. Markair Express, Inc. (In re Markair, Inc.)*, 172 B.R. 638, 641–42 (9th Cir. BAP 1994) ("The existence of a resulting trust is established by circumstances showing that the transferee was never intended to take beneficial interest through the transaction." citing *In re Foam Systems Co*., 92 B.R. 406, 408 (9th Cir. BAP 1988)).

[14] *See also Gugino v. Canyon Cty. (In re Bujak*), No. 11-ap-06038-JDP, 2012 WL 3260352, at *3 (Bankr. D. Idaho Aug. 8, 2012) ("A party claiming to be a beneficiary of a resulting trust must generally show, by clear, cogent, and convincing evidence, the underlying facts necessary to give rise to a resulting trust.")

MEMORANDUM OF DECISION–14

property is sufficient to constitute an absolute obligation by the beneficiary to pay the purchase price." *Kelley v. Yadon*, 150 Idaho 334, 337, 247 P.3d 199, 202 (2011).  One caveat is that the payment or absolute obligation to pay must have been made at or before the time of conveyance.  *McGranahan v. Rosa (In re Garcia)*, 92 F. App'x 486, 487 (9th Cir. 2004).  As applied to these facts, to impose a resulting trust on the House the record must show that: (1) Debtor and Defendant intended for Debtor to hold title in the House for Defendant and (2) Defendant paid or incurred an absolute obligation to pay for the House on or before October 25, 2010.  *See Hettinga*, 126 Idaho at 470, 886 P.2d at 775.

The first requirement is clearly met based on the record before the Court.  Both Debtor and Defendant agreed they intended for Debtor to purchase the House on behalf of Defendant and to hold title to the House.  While Debtor's schedules, statements, and declaration of homestead do not reflect this understanding, the Court credits Debtor's explanation that she may not have received adequate assistance from her bankruptcy counsel, did not fully understand the questions, and/or filled out those documents in a misguided attempt to protect the House for Defendant.  Debtor and Defendant's actions in the ten years after Debtor purchased the House readily reflect their intent for Defendant to have a beneficial interest in the House.  As Trustee acknowledged, "Debtor and Defendant's testimony suggests they have treated the [House] solely as the Defendant's property after the purchase."  Doc. No. 25, p. 2.  Further, Debtor testified in the intervening years she has never held the House out as hers, used the House as

MEMORANDUM OF DECISION–15

collateral, or paid any money on the House.  Accordingly, the Court finds the first requirement is satisfied.

The second requirement, that Defendant incurred an *absolute* obligation to pay for the House at or before the time of purchase, is a closer call under the clear and convincing standard the Court must apply.  Trustee argues the record does not support such a finding, characterizing Debtor and Defendant's testimony concerning payment for the House as a "loose arrangement," more akin to an understanding that Defendant would make the payments than an agreement.  Additionally, Trustee identifies there is nothing to bind the Defendant, such as a writing, to make the payments at the time of the closing or otherwise.  Further, Trustee highlights that Debtor and Defendant both testified they had no agreement concerning what would happen if Defendant failed to make payments on the note.  Last, Trustee argues while Defendant may have acted like he had an absolute obligation (*i.e.,* he had a subjective understanding he was obligated to make the payments on the House), that is not enough.

 The Court finds this case bears similarity to *Kelley v. Yadon*, 150 Idaho 334, 247 P.3d 199 (2011) and warrants a similar outcome.  In *Kelley*, a farmer and his wife wanted to buy a farm but lacked the cash or credit for the purchase.  *Kelley*, 150 Idaho at 335, 247 P.3d at 200.  The farmer made an oral agreement with his daughter and son-in-law that: (i) the daughter and son-in-law would buy the farm in their names, (ii) the farmer and his wife would make the payments on the loan, and (iii) when the loan was paid in full the daughter and son-in-law would deed the farm to them.  *Id.*  In the intervening

MEMORANDUM OF DECISION–16

years, the farmer and his wife operated the farm and made payments on the loan. *Id.*

Later, the daughter and son-in-law had marital difficulties, and the daughter told her

father they needed to get the title out of her and the son-in-law's names. *Id.* The farmer

and his wife sued to impose a resulting trust on the land and the son-in-law filed a

counterclaim to evict the farmer from the property. *Id.* The district court found sufficient

evidence to impose a resulting trust on the farm in favor of the farmer and his wife. *Id.*

On appeal, the Idaho Supreme Court affirmed the imposition of a resulting trust in favor

of the farmer and his wife, determining an oral agreement to repay a loan in another

person's name, such as the one made by the farmer, can satisfy the "absolute obligation"

requirement. *Kelley*, 150 Idaho at 336–37, 247 P.3d at 201–02.

Under these facts, the Court finds a resulting trust should be imposed on the House

in Defendant's favor. As in *Kelley*, Defendant made an oral agreement to pay the

monthly payments on the House.[15]  At trial Defendant testified he had a specific

agreement with Debtor that he would be responsible for paying the purchase price of the

House.[16]  As *Kelley* instructs, a written obligation to pay is not required to be absolute.

The Court credits Defendant's testimony, especially considering Defendant and Debtor's

---

[15] One distinguishing feature between this case and *Kelley* is in that case there was a clear reconveyance term (when the property was paid off). Here, it is less clear. In *Kelley*, one of appellant's arguments was that there was not sufficient evidence for imposing a resulting trust because the farmer and his wife "never demonstrated when or under what circumstances the []farm would be returned to the [farmer and his wife]." The court found that was not true, because the farmer "testified that the agreement was that he would receive title to the farm when he paid off the property." *Kelley*, 150 Idaho at 337, 247 P.3d at 202.

[16] While Debtor testified she did not have an agreement with Defendant and her mother about how the promissory note was going to be repaid, the Court concludes that Defendant is more credible regarding this term. *See* n.4.

MEMORANDUM OF DECISION–17

unrebutted assertions that Defendant has never missed a payment on the note.  Therefore, the Court finds a sufficient basis exists to conclude a resulting trust in Defendant's favor existed before the bankruptcy filing.[17]

### 2) Can Trustee use his strong-arm powers to avoid Defendant's interest in the House?

Finding Defendant is the beneficiary of a resulting trust in the House, the next question is whether Trustee can avoid Defendant's interest through the exercise of his § 544(a)(3) avoidance powers.[18]  Section 544(a)(3), a subsection of the "strong-arm" clause, provides:

---

[17] *See also Peterson v. Gentillon*, 154 Idaho 184, 191, 296 P.3d 390, 397 (2013).  In *Peterson*, the Idaho Supreme Court reversed the district court's denial of a resulting trust claim where one party (the "Partnership") argued it orally agreed to a property exchange and the other party denied the conversation took place.  *Id.*  The court found while the denying party "disputed on appeal that this oral exchange took place," its admission in its closing brief for supplemental trial that it agreed to the property exchange "strongly supports the Partnership's claim that the [denying party] intended to transfer the [property] to the Partnership and that the Partnership incurred an absolute obligation to pay for that property with the [other property]."  *Id.*  The court concluded that while "conflicting evidence may still be substantial and competent evidence, in light of the [denying party's own admissions], … substantial and competent evidence does not support the district court's finding that the [denying party] did not intend to transfer the [other property] to the Partnership."  *Id.*

[18] In Trustee's response to Defendant's post-trial memorandum, Trustee asserts that judicial estoppel and the unclean hands doctrine should preclude a finding that Defendant has an equitable interest in the House because of Debtor's change in position and the misleading representations she made on Defendant's behalf.  Doc. No. 25, p. 3.  Trustee also argues the bankruptcy estate has an interest in the House under § 544(a)(1) as a judicial lien creditor.  *Id.* at 10.  Trustee did not assert these claims in his complaint nor raise them at trial.  The Court will disregard them.  In any event, the Court finds they lack merit.  In short, Trustee's judicial estoppel argument is that Defendant should be bound by the representations Debtor made regarding the House on her bankruptcy schedules and declaration of homestead because Defendant and Debtor are in privity and Debtor acted as Defendant's "trustee or agent regarding the [House]."  Doc. No. 25, p. 6.  Trustee cites *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) for the proposition that "a non-party may be bound by a judgment if one of the parties to the earlier suit is so closely aligned with the non-party's interest as to be its virtual representative," and Idaho Supreme Court authority recognizing the applicability of judicial estoppel to "inconsistent positions taken in bankruptcy proceedings."  *McCallister v. Dixon*, 154 Idaho 891, 894, 303 P.3d 578, 581 (2013).  The Court declines to exercise its discretion to estop Defendant from asserting an

MEMORANDUM OF DECISION–18

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor … that is voidable by—
>
> ….
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

interest in the House.  Put simply, it does not find the record supports a conclusion that Debtor made the representations concerning the House on her bankruptcy schedules and declaration of homestead as a virtual representative, agent, or trustee of Defendant.  Further, nothing in the record suggests that Defendant had any knowledge regarding what Debtor stated on her bankruptcy schedules concerning the House, and while Defendant apparently knew Debtor filed the declaration of homestead, nothing suggests he authorized or encouraged Debtor to do so.  Trustee's unclean hands argument is based on the same premise and for similar reasons the Court declines to make a finding to that effect.  As to § 544(a)(1), Trustee argues since no deed was recorded transferring the House to Defendant, the bankruptcy estate still has an interest in the House under this subsection.  Section 544(a)(1) empowers a trustee with the rights of a hypothetical lien creditor, by reference to state law, as of the commencement of the case.  *Hopkins v. Brasseaux (In re Saunders)*, No. 07-ap-08081-JDP, 2008 WL 538443, at *2 (Bankr. D. Idaho Feb. 25, 2008).  Finding a resulting trust exists, the question is whether a lien creditor would prevail over Defendant's beneficial interest in that trust under Idaho law.  The Court has not found authority directly on point, however, "the Idaho Supreme Court has explained that '[i]n the absence of a statute to the contrary[,] a judgment lien is subordinate to prior conveyances and encumbrances even where these are not recorded[.]'"  *Rainsdon v. Mullen (In re Mullen)*, 402 B.R. 353, 359 (Bankr. D. Idaho 2008) (quoting *Johnson v. Casper,* 75 Idaho 256, 270, P.2d 1012, 1015 (Idaho 1954)).  This is in line with Idaho's recording statute, which unlike some jurisdictions, does not identify "creditors" among the classes afforded priority over prior unrecorded interests.  *See* Idaho Code § 55-812; *Osin v. Johnson*, 243 F.2d 653, 657 (D.C. Cir. 1957).  While strictly speaking Defendant's beneficial interest in the House is not a conveyance (*i.e.,* it arises by implication of law rather than a written instrument), the Court presumes such an interest would similarly prevail over a hypothetical judicial lien creditor of Debtor's property.  This is consistent with other courts which have found that trust beneficiaries prevail over judgment creditors under the laws of their respective states.  *See, e.g., Waner v. Maxwell (In re Waner Corp.),* 146 B.R. 973, 978–79 (Bankr. N.D. Ill. 1992) ("The Illinois Supreme Court specifically held that if plaintiff proved that a resulting trust existed in its favor, then it could take title free and clear of the judgment creditor's lien."); *In re Visiting Nurse Ass'n of W. Pennsylvania*, 143 B.R. 633 (W.D. Pa. 1992), *aff'd*, 986 F.2d 1410 (3d Cir. 1993) ("This court affirms the order of the bankruptcy court because neither judgment nor execution creditors are protected against the beneficiary of a trust under Pennsylvania law."); *Siegel v. Boston (In re Sale Guar. Corp.)*, 220 B.R. 660, 669 (9th Cir. BAP 1998), *aff'd*, 199 F.3d 1375 (9th Cir. 2000) ("Although the Bankruptcy Code provides the [t]rustee the status of a judgment lien creditor, the powers the [t]rustee wields in that role are defined by California law.  An unbroken line of California cases holds that a judgment lien creditor cannot reach property that the judgment debtor holds in trust for another.").  Accordingly, Trustee cannot prevail under § 544(a)(1) either.

§ 544(a)(3). Pursuant to this section, a bankruptcy trustee is empowered to avoid any interest in real property that a hypothetical bona fide purchaser for value ("BFP") could have avoided as of the commencement of the case.[19] *Hillen v. Wilmington Sav. Fund (In re Dennis)*, No. 19-ap-6002-JMM, 2019 WL 2214039, at *3 (Bankr. D. Idaho May 21, 2019). The rights of and who may be a BFP are determined under state law, with the qualification that the bankruptcy trustee's actual knowledge is not relevant. *In re Thomas*, 147 B.R. 526, 529 (9th Cir. BAP 1992), *aff'd*, 32 F.3d 572 (9th Cir. 1994) (citing *In re Tleel*, 876 F.2d 769, 772 (9th Cir.1989)).

Idaho is a race-notice state, so a BFP generally prevails over any unrecorded interest. Idaho Code §§ 55-606, 812. Yet, "Idaho courts have made it clear that a party cannot blindly rely upon the record if there is other information available which would 'excite the attention of a man of ordinary prudence and prompt him to further inquiry.'" *Young v. Washington Fed. Sav. & Loan Ass'n (In re Young)*, 156 B.R. 282, 285 (Bankr. D. Idaho 1993) (quoting *Farrell v. Brown*, 111 Idaho 1027, 1033, 729 P.2d 1090, 1096 (Ct. App. 1986)).[20] One recognized attention getter is where a non-record owner is in

---

[19] As a threshold matter, courts in the Ninth Circuit have not found that § 541(d) necessarily bars the avoidance of an equitable interest in real property under § 544(a)(3). *See, e.g., Boston*, 220 B.R. at 665–66; *Huber v. Danning*, 147 B.R. 526, 529 (9th Cir. BAP 1992); *In re Seaway Express Corp.*, 912 F.2d 1125, 1128–29 (9th Cir. 1990) (following the "majority rule" that "§ 541(d) does not limit the trustee's powers over real property under § 544(a)(3)" in the context of a constructive trust; *Chbat v. Tleel (In re Tleel)*, 876 F.2d 769, 772 (9th Cir. 1989).

[20] *See generally Young*, 156 B.R. at 285–86 for a brief discussion of the doctrine of inquiry notice.

possession of the property.  In such instances a BFP may be placed on inquiry notice.[21]

*See, e.g., Kalange v. Rencher*, 136 Idaho 192, 196, 30 P.3d 970, 974 (2001)

("[P]ossession by other than the grantee of record is constructive notice to a subsequent

purchaser of the claim of the person in possession."); *Fajen v. Powlus*, 96 Idaho 625,

627–28, 533 P.2d 746 (1975); *Langroise v. Becker*, 96 Idaho 218, 220–21, 526 P.2d 178

(1974); *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351 (1954).[22]

Here, the parties dispute whether Defendant's possession of the House would

provide inquiry notice to Trustee, thus nullifying his BFP status.  As to this point, Trustee

cites three cases for the proposition that a BFP has no duty to inquire further where the

non-record owner's possession of the property is "adequately explained by other

circumstances:"

> *Holzapfel v. Zimmerman (In re Holzapfel)*, No. 02-6037-TLM (Bankr. D.
> Idaho Oct. 16, 2002) (finding no duty to inquire arose when recorded real
> estate contract showed the person in possession was acting as the owner's
> agent and not as an owner); *Patel v. Rupp*, 195 B.R. 779, 784 (D. Utah
> 1996) (finding no duty to inquire arose when the renters were in possession
> of property managed by a property management company); *Zimmerman v.
> Holman (In re Holman)*, 90 I.B.C.R. 105 (Bankr. D. Idaho 1990) (finding
> no duty to inquire arose when the person in possession was the owner's
> daughter).

Doc. No. 17, p. 9.  Trustee argues that as of the petition date, as in *Holzapfel*, *Patel*, and

*Holman*, a BFP had no duty to inquire further into Defendant's possession of the House

---

[21] Most often this arises where the "purchaser under an unrecorded contract of sale has possession of the
premises."  *Zimmerman v. Holman (In re Holman)*, 90 I.B.C.R. 105, 122 (Bankr. D. Idaho 1990).

[22] *See also Murphy v. Wray (In re Wray)*, 258 B.R. 777, 785 (Bankr. D. Idaho 2001) (discussing
*Fitzgerald v. Thornley (In re Lewis)*, 19 B.R. 548, 550 (Bankr. D. Idaho 1982), which in turn discussed
the above cited cases).

because it was satisfactorily explained by Debtor's recorded declaration of homestead, which states she intends to reside at the House in the future.[23]  Additionally, Trustee notes that the declaration of homestead provides notice that Debtor does not yet occupy the House and by implication reaffirms her ownership of the House, which Debtor did hours before filing her bankruptcy petition.  Further, Trustee asserts Defendant's possession of the House is not inconsistent with Debtor's interest by virtue of their familial relationship, as in *Holman*.  Defendant argues the reverse.

Under these facts, the Court finds a BFP would have inquiry notice of Defendant's interest vis a vis his exclusive possession of the House, and accordingly Trustee cannot exercise his strong-arm powers to avoid Defendant's interest.  A key distinguishing feature between the cases cited by Trustee and the facts of this case is that in those cases the parties whose unrecorded interests were avoided were not in physical possession of the property.

In *Holzapfel*, a father conveyed two properties in Nebraska to his son and daughter-in-law (the "debtors") pursuant to a recorded deed.  No. 02-6037-TLM at 3–4.  The debtors moved to Idaho and agreed to deed the properties back to the father in exchange for him paying the properties' continuing expenses.  *Id.* at 4.  This conveyance went unrecorded.  *Id.*  Later, the father sold the properties to buyers pursuant to a real

---

[23] As an aside, the Court notes that information within a debtor's bankruptcy schedules or statements may not be used to defeat a trustee's status as a BFP under § 544(a)(3).  *Chase Manhattan Bank USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1078 (9th Cir. 2010).  The same is not true of a debtor's bankruptcy petition.  *See id.*

MEMORANDUM OF DECISION–22

estate contract, utilizing a power of attorney on behalf of debtors (since the properties

were still in debtors' names). *Id.* at 4–5. After debtors filed for bankruptcy, the buyers

paid off the real estate contract. *Id.* at 5. The father sued the chapter 7 trustee for a

determination that the properties and/or proceeds were not property of the estate. *Id.* at 6.

The court found based on the stipulated facts the father had a resulting trust in the

properties, but that the trustee could avoid his interest under § 544(a)(3). Applying

Nebraska law,[24] the court concluded a purchaser of the properties as of the petition date

would take clear of the father's interest. *Id.* at 8, 12. In so holding, the court explained:

> The possession of the property by non-titleholders [the buyers] is
> adequately explained by the recorded real estate contract. To the extent of
> any possession by the [father], or any other indication regarding the
> [father's] potential interests, the very same recorded real estate contract
> makes clear that the [father] was acting on behalf of the [d]ebtors under a
> power of attorney. This satisfactorily explains the [father's] involvement
> with the properties. Further inquiry by a prospective purchaser or
> encumbrancer in the [father's] interest, including potential equitable rights,
> would not have reasonably been triggered.[25]

*Holzapfel*, No. 02-6037-TLM at 12.

---

[24] The inquiry notice standard under Nebraska law is similar to the Idaho standard. *See Holzapfel*, No.
02-6037-TLM at 11 ("The Nebraska authorities make clear that a purchaser is placed on notice by facts
and circumstances which would excite the attention of an ordinary, prudent individual. Possession of the
property by someone other than the record owner would certainly qualify.")

[25] The court continued:
> [A] hypothetical bona fide purchaser or transferee on the date of the [d]ebtors'
> bankruptcy petition would not be placed on constructive notice of the unrecorded interest
> of the [father]. The real property records contained the 1998 real estate contract that
> expressly noted the [father] was acting as an agent of the [d]ebtors by virtue of and
> through a power of attorney. This provided sufficient information to a bona fide
> purchaser to eliminate need for further inquiry as to the [father's] possible interests or
> claims. Thus … any real property interest of the [father's] would be avoidable under
> section 544(a)(3) notwithstanding the existence of the resulting trust.
*Id*. at 13.

MEMORANDUM OF DECISION–23

In *Patel*, the party whose unrecorded interest was avoided under § 544(a)(3) was not physically present on the property. 195 B.R. at 784. Rather, she lived in a different state and hired a management company to rent the property on her behalf. *Id.* at 781. Applying Utah law, the court found a BFP would not be on inquiry notice, noting:

> Upon initial inspection, the only duty the B.F.P. has is to inquire of any persons in actual physical possession of the property of the extent of their interests. Actual physical possession by an individual with an unrecorded interest in the property satisfies the first prong of the analysis[26] because the B.F.P. will learn of that potentially adverse claim upon inquiring of that person of their interest.

*Id.* at 784. The court observed that "hiring a company to manage property, as with renting property to tenants," would not put a BFP on inquiry notice because "such an arrangement would not be inconsistent with or adverse to the recorded interests." *Id.*

In *Holman*, a mother and father conveyed a half interest in property to their daughter and the other half to their son. 90 I.B.C.R. at 105. The conveyance was not recorded. *Id.* at 108. The father filed for bankruptcy and the trustee sought to avoid the son's interest under § 544(a)(3). *Id.* at 112. The son argued since his sister lived at the property and his parents and sister filed homestead declarations, a prospective purchaser would be put on inquiry notice, thus defeating their status as a BFP. *Id.* Applying Idaho law, the court did not find that the daughter being in possession of and residing at the

---

[26] Under Utah law, the doctrine of inquiry notice has two prongs:
> First, the court must determine whether the purchaser is in possession of facts, or whether inspection of the property would have brought to the purchaser's attention activity on the property, which would have reasonably alerted the purchaser to potential claims of any party other than the grantor or record title holder. [If so,] the purchaser is charged with all knowledge that a reasonable due diligence investigation would have revealed.

*Patel*, 195 B.R. at 783–84.

MEMORANDUM OF DECISION–24

property would put a prospective purchaser on inquiry notice because "there was nothing untoward about a daughter living on property owned by her parents." *Id.* at 113. Importantly, the court concluded "[i]f [the son] had been residing on the property the situation would be different. … Since [the son] has never been in actual possession of the property and the possession by his sister does not amount to a situation inconsistent with the interest of the original sellers, [the parents], such other purchaser (the hypothetical bona fide purchaser) would be under no duty to conduct an independent investigation under Idaho law." *Id*.

In this case, Defendant was in open possession and accordingly a BFP could not merely rely on the record.  The Court does not find Debtor's declaration of homestead changes the analysis.  As the court noted in *Holman*, "[a] declaration of homestead is not evidence of title[,] nor it is in any way a substitute for constructive notice of title."  90 I.B.C.R. at 113 (finding the recorded declarations of homestead would not be sufficient to place a prospective purchaser on inquiry notice because under the circumstances "a record title search, [] may or may not reveal the homesteads since the reasonable prudent buyer would not be obligated to search the homestead indexes[.]")  Unlike in *Holzapfel*, *Patel*, and *Holman*, investigation of the property would have revealed Defendant's possession, which would have reasonably alerted the purchaser to potential claims of his as to the House.  The Court finds this is consistent with the inquiry notice doctrine under Idaho law, as encapsulated by the Idaho Supreme Court in *Langroise*: "[o]ne buying property in the possession of a third party is put upon notice of any claim of title or right

MEMORANDUM OF DECISION–25

of possession by such third party, which a reasonable investigation would reveal."[27] 96

Idaho at 220, 526 P.2d at 180; *see also Holman*, 90 I.B.C.R. at 112–13 (noting the same

and quoting *Langroise*).

### Conclusion

For the reasons set forth above, the Court concludes the bankruptcy estate has no

interest in the House and Trustee cannot avoid Defendant's interest under § 544(a)(3).

DATED:  December 6, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

---

[27] The court went on to say: "We believe that this is the appropriate rule in determining good faith under the recording act, i.e., that one cannot be a good faith purchaser or encumbrancer when a reasonable investigation of the property would have revealed the existence of the conflicting claim in question." *Langroise*, 96 Idaho at 220–21, 526 P.2d at 180–81.

MEMORANDUM OF DECISION–26